UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEANCLAUDE WOUTERS,

                              Plaintiff,              Case # 19-cv-610-FPG

v.                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff JeanClaude Wouters protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act") on May 1, 2017 and for Supplemental Security Income under Title XVI of the Act on October 20, 2014, alleging disability beginning July 18, 2014.  Tr.[1] 91, 169-74, 196-202.  After the Social Security Administration ("SSA") denied his claim (Tr. 105-16), Plaintiff appeared, with counsel, at a hearing on July 11, 2017 before Administrative Law Judge Maria Herrero-Jaarsma (the "ALJ").  Tr. 39-90.  On September 29, 2017, the ALJ issued an unfavorable decision.  Tr. 21-34.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA.  Tr. 1-6.  Plaintiff then appealed to this Court.[2]  ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 9, 10.  For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter.  ECF No. 6.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.      The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step

one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date and

through the date last insured.  Tr. 23.  At step two, the ALJ found that Plaintiff had the following

severe impairments: lumbar and cervical disc herniation; migraines/post-traumatic headaches;

post-traumatic stress disorder ("PTSD") with acute stress reaction; major depressive disorder;

anxiety disorder with panic attacks; and histrionic personality disorder.  Tr. 24.  At step three, the

ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.

Tr. 24-25.  Next, the ALJ determined that Plaintiff retains the RFC to perform light work, with the

following additional limitations:

> claimant has no manipulative, visual, or communicative limitations. He can never
> tolerate exposure to extreme cold, extreme heat, wetness, and humidity. The claimant
> can tolerate no more than moderate levels of noise as defined in the Dictionary of
> Occupational Titles (DOT) and its related publications. The claimant should avoid
> working with bright lights or flickering lights and could not perform a job requiring
> driving motor vehicles or other machinery. The claimant will be off-task 5% of the day
> in addition to regularly scheduled breaks and is able to understand, carry out, and
> remember simple, routine, and repetitive tasks defined as work that requires doing the
> same tasks every day with little variation in location, hours, or tasks. The claimant is
> limited to work in a low stress environment (meaning no work with supervisory
> responsibilities; no work at production rate pace; no fast-moving assembly line-type
> work; work with no independent decision-making required except with respect to
> simple, routine, and repetitive decisions; and work with few, if any workplace changes
> in routines, processes, or settings). He is limited to work that would not require a high
> level of attention to detail and would not require travel to unfamiliar places. The
> claimant is limited to work that can be performed independently or work that can be
> performed generally isolated from other employees. He is also limited to work that
> involves occasional contact and interaction with supervisors and coworkers and
> incidental contact and interaction with the public.

Tr. 25-26.

At step four, the ALJ found that Plaintiff had no past relevant work.  Tr. 32.  At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform, and therefore, the ALJ concluded that Plaintiff is not disabled.  Tr. 33-34.

## II.    Analysis

Plaintiff argues that (1) the ALJ's conclusion that Plaintiff would be off task five percent of the time is not supported by substantial evidence and (2) the Commissioner failed to give good reasons for rejecting the opinion of Plaintiff's treating physician, which was submitted to the Appeals Council.  ECF No. 9-1.  Because the Court agrees that the ALJ's RFC indicating that Plaintiff would be off task for five percent of the workday was not supported by substantial evidence, the Court will not address Plaintiff's remaining argument.

Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an "ALJ's own surmise." *Cosnyka v. Colvin*, 576 Fed. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday").

Although much of the RFC here is detailed and well-reasoned, the ALJ's stipulation that Plaintiff would be off-task five percent of the time is not.  Indeed, the ALJ does not point to any evidence in the record suggesting why Plaintiff would be off-task for this specific percentage of time. *Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at *17 (W.D.N.Y. July 28, 2017) ("The ALJ does not point to any indication in the record as to why this particular duration

would permit Plaintiff to finish forty hours of light work a week.").   "Without some explanation from [the ALJ] to the tether between her RFC and the . . . medical opinions or statements from plaintiff, the RFC appears to be based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand."   *Jordan v. Berryhill*, No. 1:17-CV-00509(JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018); *see Silkowski v. Commissioner*, No. 18-CV-6727, 2020 WL 1493951, at *6 (W.D.N.Y. Mar. 27, 2020) (where doctor opined that the plaintiff required "frequent opportunities to alternate between sitting, standing and walking," the ALJ erred in assessing an RFC requiring the plaintiff to change position every 60 minutes for up to five minutes without leaving the workstation, because the ALJ "provided no . . . tether between 'frequent' and 'every 60 minutes for up to 5 minutes.'" (quoting another source)).

In its response to Plaintiff's argument that this specific time off-task is not supported by the record, the Commissioner points to generalizations about Plaintiff's mental health such as that he was cooperative, oriented, and alert and had a normal memory, fund of knowledge, and intact attention and concentration.   ECF No. 10-1 at 17.   None of these generalizations were included in the ALJ's decision as support for the off-task assessment nor do they translate into a finding that Plaintiff would be off-task five percent of the day.   *See Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019) ("Nor do any other treatment records indicate this limitation (or any limitation with respect to the amount of time that Elder would be on or off task). Rather, Dr. Patel noted more generally that Elder had difficulty maintaining attention and concentration, and Drs. Liu and Ajtai reached similar conclusions. Only the ALJ imposed specific time frames on Elder's ability to stay on task.").   If the ALJ believed that an off-task limitation was necessary, she should have obtained a medical opinion supporting such a

limitation.  *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *5 (W.D.N.Y. Apr. 28, 2020).

This is especially true where, as here, the ALJ discounted all of the opinions in the record. To be sure, an ALJ is free to choose between properly submitted medical opinions, but she may not substitute her own lay opinion for those of medical experts. *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  The off-task component of the RFC here was not tethered to any particular medical opinion evidence and the ALJ gave diminished weight to all of the opinions she addressed. Tr. 31-32.  Because the ALJ here did not give controlling or substantial weight to any opinion that supported the RFC, it is unclear precisely where the limitations set forth in the RFC came from and why they did not go further. *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019).

The ALJ's error was not harmless.  The vocational expert testified that the maximum time off task would be 15% and would preclude all unskilled work.  Tr. 89.  In other words, if Plaintiff would in fact be off-task more than the five-percent allocated by the ALJ, he may be considered disabled.  *Elder*, 2019 WL 6320355, at *5-6 ("At best, then, the ALJ's conclusion comes from whole cloth. At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 10) is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings

consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court

shall enter judgment and close this case.

       IT IS SO ORDERED.

       Dated: May 7, 2020
              Rochester, New York

                                    HON. FRANK P. GERACI, JR.
                                    Chief Judge
                                    United States District Court